23-1224 Pogosyan v. Weiser Please the court. My name is Michael Juba and I represent the appellant Alexander Pogosyan in this case. I would like to reserve three minutes for rebuttal argument. With me at counsel table is Madison Whitley from my office. Your honors, Mr. Pogosyan was charged as a juvenile in adult court and later convicted of five counts of murder in the first degree. He was originally sentenced to five consecutive sentences of life in prison without the possibility of parole. Mr. Pogosyan was convicted based in part on the videotaped statement of a non-testifying accomplice who inculpated Mr. Pogosyan in these crimes. That person was Mr. Mark DeRosian, Arthur Mark DeRosian. Mr. Mark DeRosian's videotaped statements at trial were different in kind from any other witness and any evidence presented against Mr. Pogosyan in this trial. Mr. Mark DeRosian was the only direct eyewitness in this case who told the jury that he was present when these crimes were committed. He knew Mr. Pogosyan and could identify him and he saw and heard Mr. Pogosyan commit these crimes. I mean other than the defendant I mean wasn't there a substantial record of other witnesses who testified that on the day of the murders that the defendant himself through his own statements put himself up the scene and made statements about he and the other shooter is the ones that committed these crimes. There were statements, there were witnesses who testified later regarding Mr. Pogosyan's alleged statements to them about what happened. That's a factor that this court considers when this court looks at the Van Arsdale factors and whether the introduction of this erroneous evidence was had a substantial and injurious effect on this jury. That's that is a factor that this court considers when weighing the fifth factor under Van Arsdale, specifically the overall strength of the prosecution's case. But when this court looks at that factor, the overall strength of prosecution's case, the analysis is not a sufficiency of the evidence analysis. The analysis is not whether even there was enough evidence to convict Mr. Pogosyan by looking at those statements. It's not looking at the evidence only presented on the prosecution's behalf nor is it looking at the evidence looked at in the light most favorable to the prosecution. When the court's analyzing that fifth factor under Van Arsdale, this court is required to look at all of the evidence when determining the strength of the prosecution's case. That includes the evidence presented by the prosecution, the attacks on that evidence by the defense, the attacks on the witnesses credibility that testified those evidence. The defense putting on evidence stating that there was a separate second shooter. So all of those factors do come into play but it's not dispositive in terms of the test that this court looks to under Van Arsdale. And that test would be whether it undermines our confidence in the verdict? It is determined whether this court has grave doubts as to the reliability of this verdict. And the test under Brecht is whether there was a substantial and injurious effect on this jury's verdict. And this court can look to several different pieces of evidence in this case and several different factors in this case to conclude, in addition to the test under Van Arsdale, that this particular evidence did have that substantial and injurious effect. The court can start by looking at the actions of the jury itself. This was a lengthy trial. The length of the trial was determined in part by the amount of evidence that needed to be presented. So we're skipping over the Ohio versus Roberts and going right to the second part of the analysis? I skipped over that because of the court's question. I can back up and talk about the erroneous decision from the Colorado Court of Appeals. The Colorado Court of Appeals is opinion... Well, first of all, we're all in agreement we're under the Ohio versus Roberts and not Crawford. That's correct. Okay, so go ahead. What were you saying about the jury? What I was going to say was... You were analyzing that vis-a-vis the strength of the government's case. I was analyzing the jury's actions when looking at whether the admission of this evidence had a substantial and erroneous effect on this jury. What actions were you talking about? I looked at two separate things from this jury. The first was the length of deliberations. The jury deliberated for approximately five days in this case. The second factor I looked to is the verdict itself. They came to a split verdict in this case. They found Mr. Pagosian not guilty of all five counts of murder in the first degree after deliberation. They found him guilty of felony murder, five counts of felony murder, and five counts of murder in the second degree. The other factor that I looked to is the fact that this jury requested to see Mr. Martirosian's taped interview. On that, the video was played for them, the 90 minutes or so, during the trial. I have to tell you, it's pretty hard to understand Mr. Martirosian. His head was down, he was mumbling most of the time, and in fact I went back and repeated some of it because I couldn't understand what he said. So don't we have to dismiss that because we have no idea why they wanted to see that tape. Maybe it's because they couldn't hear him. The court is not required to dismiss that, and other courts have found that the fact that the jury asked to see a specific piece of evidence at issue shows the importance of that evidence in the overall strength of the prosecution's case. We have to analyze it in the context of this case, in this video is not a piece of art. Conceding that, your honor, I still think that this court can give weight to the fact that the jury requested only two pieces of evidence. They requested the 911 call, and they requested to see this video. There might be an alternative explanation for requesting that, but I still think that this court can give weight to it when deciding whether it wasn't an important piece of evidence in this case. My concern is not just that piece, but with the other two things. The verdict, that they didn't find him guilty of the greatest charge, and the length of time for deliberation. And you say that diminishes the power of the prosecution's case. At least, that's how we should view it. Your honor, when looking at the- And my concern is all that is so speculative, how can we consider that? I think our position, your honor, is that the court can give weight to these facts when considering that fifth factor under Van Arsdale, when looking at the strength of the prosecution's case. The court can also look at what happened after the members gave a statement, a sworn statement, in an affidavit to the defense investigator that she did not believe that Mr. Pagosian was guilty of these offenses beyond a reasonable doubt. That the verdicts that were- Well, that's not in- I mean, that's not before us. You haven't brought a claim on that, have you? I have not brought a separate claim, but our position is that this court can consider, that was in our briefing, and our position is that this court can consider the statements of the jury member after the verdict is read when deciding on, or when analyzing the strength of the prosecution's case here. I guess my concern on that factor and the other three is there are just legions of jurisprudence that says it is so speculative for a jurist to put themselves in the jury room and don't do it. Isn't that our general admonition in our jurisprudence? Your honor, again, conceding, yes, and conceding that to be true, our position is still that it's a factor that this court can consider in the fifth factor of the multi-part test under Van Arsdale. The court is instructed to look at several other factors as well. The court's instructed to look at the importance of this witness's testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting that testimony on material points. Can I stop you there? Can you address that factor, the third one, please? The presence or absence of evidence corroborating or contradicting testimony on material points. Yes, specifically in regards to the information that was contained within this witness's interviews with the police officers that they watched on the video. Yes, your honor. Our position is that this third factor weighs heavily in Mr. Pagosian's favor, that there weren't any additional corroborating witnesses who were able to corroborate this testimony on its material points. Well, what about Ms. Peterson? I mean, according to her and according to her mother, who saw her right when she got off the phone, your client admitted that we killed five people, claimed to have shot some people, and that we shot a dude, Zach, Marissa, and her mom. It's pretty specific. That's damning to your client, isn't it? Your honor, I analyze that differently for the following reasons. Whether a fact is significant for this jury is a question of fact. But this court, like many other courts, gives great weight to direct eyewitness testimony describing the events while they're happening. And this court has found that that fact alone can show that a claim, a federal habeas claim, should not proceed. What about Barbara Springs? She said that the two people with the guns going into the Paris residence that she clearly identified Martinez. And the other one was the shortest one of all of them. And the only person we're talking about is the petitioner. Your honor, that's not clear that the only person that's being spoken about is the petitioner. Many facts in this trial were... But didn't Barbara Springs identify the two possessors of the guns as Martinez and the clearly shortest one, 5-3 or 5-4? Didn't she say that? Correct. Now isn't that as close as you can... It's as close as the declarant, Martizian. It's substantially different for the following reasons. That witness was a witness who was not familiar with the people. She was witnessing this from some distance. She witnessed four separate people in and around that car. And it's undisputed that there were four people there. She was picking out two people. One was Martinez, who was... It's not opposed that Mr. Martinez was one of the people. She picked out one of... Another person and described that person in various detail as one of the other three people. The difference is this, though. Mr. Martizian was literally in that vehicle with these people. He heard the plan while they were driving to that location. He heard them talk about what they were going to do. He drove them to the location, saw them actually get out of the vehicle, retrieve the firearms. He knew Mr. Pagosian. He knew him by name. He had known him for years. And he was sure. And he said, that's the guy. I know him. I was there. I saw him do it. He saw Mr. Pagosian run in. The fact that he had that familiarity with Mr. Pagosian makes it materially different than a random eyewitness who's describing an event that she's not sure what's happening from a distance. All right. The issue we're addressing is cumulative or contradictory. Now, you've addressed the cumulative. What is there in the record that is contradictory of what Martizian said? I think that's what Martizian said. Your Honor, the defense did put on a substantial amount of evidence that the jury heard regarding the identity of the second shooter. The defense's theory at trial was that Mr. Pagosian, Mr. Alexander Pagosian, was certainly present at the first shooting as there were four people in the car. He had knowledge of the shooting. He may have... But to be contradictory, it has to be, okay, there is other evidence that his brother was the possessor. And there was other evidence in the record presented to the jury to show that the brother, Roman Pagosian, was the second shooter. There was a glove found in the trash bin outside of his vehicle or outside of his residence that had his DNA on it. There was a glove found on Mr. Martinez when he was... Okay, let me ask you this. In the nature of testimonial evidence rather than is there any testimonial evidence that is contradictory to Alex Pagosian going in with the gun? There was not any other witness who identified a separate party as the second shooter. Correct. And you're out of time. Thank you. Over. Thank you. And can you give him an extra two minutes so we even it up? Good morning and may it please the court. My name is Brian Lanny and I represent the respondents. I made an argument here that the district court erred in applying EDPA to this case. And I'm happy to discuss that issue. But I prefer to start by emphasizing some things about the Brecht standard that's applicable here. Are you conceding that the admission of this testimony at trial was contrary to federal law? Contrary to clearly established federal law? I'm not, Your Honor. You're not. I'm not. And I'll try to concisely say why I'm not. I think that Lilly, which I agree is the clearly established federal law, did not categorically bar the consideration of a statement's self-inculpatory nature in this context when assessing its reliability. What Lilly barred, I think, was consideration of self-inculpatory statement A as bearing on the reliability of non-self-inculpatory statement B. And there's quite a bit of language in Lilly to support that position. And I won't belabor it, that it was in my brief. The problem for me, and I recognize it, is that in Stevens, a panel of this court, I think in more clearer terms decided that Lilly did establish that categorical bar. Well, and for clearly established, it's Supreme Court or Tenth Circuit, isn't it? I disagree with that, Your Honor, respectfully. I think that the precedent of the Circuit does not dictate whether something is clearly established or not, except I think the nuance here is that a panel of this court that is binding here has said this particular principle of law was clearly established in Lilly. As to voluntary, no. I think what I'm talking about here is Stevens, the Stevens court's view of what consider the self-inculpatory nature of a statement as bearing on its reliability. Well, the district court also relied on the voluntariness or the court below of his statement, and that seems contrary to case law. And it also relied on the absence of a promise of leniency, which also seems to be contrary. And I agree, Your Honor. And I still don't concede. I acknowledge that there are some respects, some of the state court's decisions that are inconsistent with Lilly, but that is where I think the AEDPA standard comes into play. And my ultimate position on that question is that those inconsistencies are not enough to render the decision contrary to or diametrically opposed to the clear holding of Lilly. Okay. I want to emphasize some things about the Brecht standard and some of the language that the Supreme Court has used when discussing it. I think it's clear from the case law that it's a significantly higher bar than ordinary harmless error. The court has said that it's not enough to show a reasonable possibility that an error effect averted. The court has said that a speculative finding of prejudice is not enough. And, you know, and ultimately has said that the court must have a grave doubt as to whether the error had an actual substantial and injurious effect. And I think the word actual has to be given some meaning. And I think an example of to take this case and turn it into an example where I think this standard would be satisfied would be if Mr. Martirosian's statements were actually the only evidence identifying the petitioner as the person who went into these two homes and killed these victims with Mr. Martinez. In that case, the court wouldn't need to speculate to find that it had an actual effect on the verdict because it would have been the only evidence from which the jury could have found that he was that person. I want to respond to the argument that some of these other witnesses, you know, this was not a this was not a star witness case. This was not a case where the prosecution put all their eggs in the basket of one witness or present or it's not a case like Jensen, where the prosecution presented one piece of evidence that was a make or break piece of evidence. This was a case where the prosecution presented a constellation of multiple witnesses who were credible in their own right and very powerfully corroborated one another. Well, and they also were they also were were subject to some significant cross examination. I mean, this was not, you know, the the Mormon Tabernacle Choir. I agree. Well, Your Honor, I guess actually I'd like to push back on that. And I think I I I'll start with Noelle Peterson. And I don't mean to imply that she was a star witness. I think she was one of the strongest witnesses. But I want to address the attack on her credibility. You know, Noelle Peterson testified to this phone call with some considerable detail. Right. She she she says that, you know, he emotionally confessed to these murders. He personally killed three of these victims. He and Martinez together killed five victims. He he's you know, he's going to jail. He may end he may take his own life. He gives her some other important details. He's worried because Martinez wasn't wearing a mask and he's angry at another acquaintance of theirs, Robbie Chermilo, because she because she ditched him. And Peterson's testimony was credible in its own right because she she did not have a reason to make that up. Well, wasn't she cross examined and admitted she's on probation and her probation officer told her she's going to get in trouble if she didn't cooperate and testify? If she didn't testify. And, Your Honor, in another case, that could that type of attack on credibility can certainly be meaningful. But here, you do concede, though, that Mark DeRozan was a key. I concede that the prosecutor referred to him as one of the key witnesses in opening statement. Who were the other key witnesses? The other person that the prosecutor was referring to was Steve Lawson. And I if those are the two, they had something in common. They were the two individuals who were in the car with these two shooters. Right. One at the Paris scene, one immediately after the Harvard scene. And I'd submit that that that was the thrust of what the prosecutor was saying. Well, no. Well, there's another one. Roman. Roman didn't testify. Correct. But Roman wasn't subpoenaed. I don't think Roman I don't think Roman could be found, Your Honor, was my impression from the record. I didn't know he was one of the lost ones. I don't I don't I don't recall. And I don't want to take a position on that because I don't recall from the record. But I think the point being that those were the witnesses the prosecution had lined up to call. And I think the prosecutor's reference to them as the key as key witnesses should be tempered by the fact that they had this in common. And I think that's what the prosecutor was referring to. And the other thing that I think very compellingly tempers the prosecutor's reference to them is that by the end of the three week trial, the prosecutor is standing there arguing to the jury that they don't really even need to consider Mr. Martirosian's statements to find this case proven beyond a reasonable doubt. And so I think here there are so many nagging things about this case and we have to put it in the formula where ultimately does it give us grave doubt about this? Well, some of the things are the length of deliberation. I mean, we all know the general popular view is that, you know, they're going to come back quick if they really nail that defendant. The nature of the verdict, they didn't find him guilty of the greatest charges. And this is one of two pieces of evidence that they asked to see. Those are nagging things. And I'm just wondering, at what point are you pushed over to grave doubt? Well, I have several things to say about those, Your Honor. I'll try to go through them. I think my end point, though, is going to be, I think what was already mentioned here was that those are all speculative considerations. But let me get there. You know, the jury deliberating a long time, there is more than one other explanation for why they would do that. You know, there was a lot of charges in this case. This was a very high gravity case. This was a quintuple murder with teenage victims. And I think it's certainly reasonable to think that the jury, even if faced with a very strong prosecution case, wouldn't just phone in a deliberation and would take their time to go through the evidence. The fact that the jury acquitted on after deliberation murder is important here. And I guess I should clarify that when I argue the prosecution's case was very strong, so strong that it, that by itself is my argument, should overcome a finding of brent prejudice. I'm talking about the prosecution's case proving that the petitioner was the second shooter. I'll admit that there is a contested issue of deliberation, of whether those murders occurred after deliberation. And of course, the jury acquitted, right? The jury acquitted on those counts. So when I say the prosecution's case was strong or overwhelming, I'm talking about the case supporting the counts that ended in conviction. And I think the fact that the jury acquitted on deliberation means it's very reasonable to believe that the deliberation about that element of first degree murder consumed a great deal of time and is the reason that they deliberated so long in this case. And, you know, I'd also point out that this spills over, and this is all also consistent with the jury asking to view the interview again, that there was some references to Martirosian in closing argument, Mr. Martirosian made some statements that, in my view, cast some doubt on whether these, whether the petitioner committed these murders after deliberation. Mr. Martirosian is the one who said that on the way over to the Paris scene, Mr. Martinez was telling everybody, we're not going in there to kill people, we're going in there to stash these shotguns. And Mr. Martirosian is the one who said that when they got there and parked the car, it took some time for Mr. Martinez to convince the petitioner, who was reluctant to go into that house. So I think the jury asking to see the video again, an additional explanation for that would be that they had been thinking about this nuanced question since closing argument and wanted to see the interview again. When we look at the five Van Arsdale factors, you would concede that several of them may in fact be in favor of the petitioner here, right? I can see that. Certainly one. He was not subject to cross-examination. Certainly one. Certainly, I would think you would at least hint at conceding maybe that his statements were not cumulative. I do. Although with a caveat that a lot of the ways it was not, there was not other cumulative evidence was, I think, of no moment for purposes of the jury. And by that, I mean, the seats they were sitting in and particular things that they said, other than the incriminating things, there was no evidence too much of those things. But I don't think that matters outside of the AEDPA context. Okay. So if we get to these last three factors, how do we weigh them against each other? In other words, is it your view that a petitioner here has to prevail on all of them because of the high standard we're at here in a habeas proceeding? That's not my view, Your Honor. My view is that, first of all, I think the lines are pretty blurry between some of these factors in this case. And that may not be true in every case. I think the district court recognized that it's hard in this case to talk about the importance of Mr. Marosian's statements to the prosecution without spilling over into also talking about the fact that it was very heavily corroborated by a number of other witnesses. And you're also then talking about the last factor, the overall strength of the prosecution's case. My position here really is that that last factor here weighs so heavily in the state's favor that it settles the question under Van Arstal and Brecht. And I think there is some case law, I don't blank on the name or if I cited it, but, you know, saying as much that that factor is often the most critical factor. And it is the reason here, Your Honor, that Brecht is not satisfied. Can we even consider the post-trial statement of the juror? My first position is that, no, the court should not be considering that. And the reason is for the same reason, basically, that the trial court denied the motion for a new trial, which is that under state and federal law, that is precisely the type of evidence that a court is not permitted to receive. And that is why the trial court said, after hearing the defense's offer of proof, this is in violation of, you know, Colorado Rule 606, which is the same as federal Rule 606. And I am striking it. So my position is that that is, while it is technically in the record because it was attached to a motion to dismiss, it is not in the record for purposes of our record. And I understand your position on Colorado law. But we're dealing with Brecht here and Van Arstal. Assuming we do consider it, how does it factor in, if at all? Assuming you do consider it, I think it goes into the bucket of reasons that would be too speculative to support a finding of prejudice under Brecht. And the reason I say that is because it would be speculative to assume that it was the admission of Mr. Martirosian's statement that bore upon this juror's thinking, or even that it had much to do with the strength of the prosecution's evidence. And I mean, I'll also point to, I think when the defense was making their offer of proof, defense counsel made a comment to the effect that this juror had reservations about some of the charges. Not all of them. I can't remember the exact language they used, but that is another reason why then if we're applying Brecht harmlessness, it would be speculation to say that it would be prejudice that would reach all of the counts, if that makes sense. Didn't we say in Littlejohn in 2013 that the fifth Van Arsdal factor alone could not establish harmlessness? I think you, I think the court said something to that effect. But I think this goes back to the fact that the, that under the circumstances of this case and the nature of the evidence presented here, the factors are, the factors are very much sort of smeared together in this case. But you're giving a lot of weight to the sufficiency or the strength, excuse me, overall of the government's case. I'm giving a lot of weight because I guess I'm asking you then if you, and I agree with you that there, you know, there is some smooshing, to use your word, of the different factors. But if we're going to sort of put this formula and these factors together to reach a determination on grave doubt, can you address maybe the first and third factors? Sure. Yeah, I think the strength of the prosecution's case, you know, I had a discussion with Judge Murphy a moment ago about the prosecutor's reference to that. I think that's, that's, the import of that sort of falls away when you read the entire record of this case. And I think all that shows at most is that the prosecutors believed perhaps Mr. Martirosian's statements would provide some convenience in that it was a sort of a continuous timeline for part of this criminal episode. But I think what the closing argument shows is by the end of trial, they, having sat there for the presentation of the much more compelling evidence, they were no longer of that opinion. And for corroboration, Your Honor, again, I spent a very long time at the podium here going through the prosecution's evidence and why the attacks, the credibility attacks, didn't carry any water. That's all in my brief, but there was, there was a enormous amount of corroboration, very compelling corroboration in the details of these witnesses' statements, not just the witnesses who the petitioner confessed his involvement to, but also with Barbara Springsteen. And that factor, I would say, would weigh heavily in our, in our favor as well. So I would ask the court to affirm the district court and find that the Brecht standard has not been met in this case. Thank you very much. Thank you. And I think you're out of time. Is that correct? Okay, we will take this matter under advisement. We appreciate the briefing and argument today.